HOUGHTON WOOL CO. v. MORRIS et al.

In re RINGROSE & DRAPER.

(Circuit Court of Appeals, First Circuit. March 6, 1918.)

No. 1314.

1. BANKRUPTCY ⬧⟶81(1)—INVOLUNTARY PROCEEDINGS—SUFFICIENCY OF PETITION.

An involuntary petition in bankruptcy against a partnership *held* sufficient, where it was answered without objection thereto, although it did not distinctly allege that the partners individually were insolvent.

2. BANKRUPTCY ⬧⟶91(2)—PARTNERSHIP—FINDING OF INSOLVENCY.

Finding of a referee, confirmed by the court, that an alleged bankrupt partnership, at the time of making transfers of property, was insolvent, *held* supported by the evidence, although there was no specific finding or evidence as to the financial condition of the partners individually, as distinct from the firm.

Appeal from the District Court of the United States for the District of Massachusetts; Jas. M. Morton, Jr., Judge.

In the matter of Ringrose & Draper, bankrupts; Lawrence G. Morris and others, petitioners. The Houghton Wool Company, objecting creditor, appeals from an order of adjudication. Affirmed.

George V. Phipps, of Boston, Mass. (Robert A. B. Cook and Phipps, Durgin & Cook, all of Boston, Mass., on the brief), for appellant.

Lee M. Friedman, of Boston, Mass. (Swift, Friedman & Atherton, of Boston, Mass., on the brief), for appellees.

Before DODGE, BINGHAM, and JOHNSON, Circuit Judges.

DODGE, Circuit Judge. This is an appeal from an adjudication in bankruptcy in involuntary proceedings against a firm composed of two persons as partners; transfers intended as preferences being relied on as acts of bankruptcy. The appellant, Houghton Wool Company, is one of the creditors alleged to have received such preference. It opposed adjudication, denying that the alleged bankrupts had committed the acts of bankruptcy charged or were insolvent.

[1] The involuntary petition alleged that Ringrose and Draper, doing business under the firm name of Ringrose & Draper, were insolvent, etc. It did not distinctly allege that the firm was insolvent, and that each partner was also insolvent, as in strictness it should have done, according to In re Forbes (D. C.) 128 Fed. 137, 139. It alleged only that "said Ringrose & Draper are insolvent" and committed acts of bankruptcy, in that "they did * * * transfer," etc., certain property; whether theirs or the firm's not being spec-

ified. If these allegations can be taken as meaning that the firm only was insolvent, they are at least as well adapted to convey the meaning that the partners named were insolvent. No objection, however, appears to have been at any time raised to the form of the petition.

In answers filed by each partner, each denied "that he individually or said firm is insolvent." But in the denial of bankruptcy filed by the present appellant it denied only "that the said alleged bankrupts * * * are insolvent," and after its appeal from the adjudication it applied for a decree "severing it in every way from the respondents and from the other objecting creditor, who have not joined in this appeal." The court allowed the application, and entered an order permitting it "singly to claim and prosecute the appeal."

[2] There was a reference to ascertain and report the facts, and a report, wherein the referee found that the alleged transfers had been made, and made with intent to prefer the creditors who received them.

He found also:

"If, as a matter of law and upon the foregoing evidence I may so find, that at the time of said transfers the respondent firm was insolvent."

The report did not set forth the evidence heard by the referee in full, but it did set forth the substance of "the foregoing evidence" referred to. The question is whether or not the finding that the firm was insolvent was warranted.

It is not contended that the evidence did not show insolvency of the firm, if such insolvency can be shown without specific proof that neither partner possessed sufficient resources, over and above his individual debts, to meet the partnership deficit or had assets enough to pay the firm's obligations. No specific proof appears in the evidence set forth in the report, expressly relating to the financial condition of each partner, as distinct from the firm.

The report contained, previously to the above conclusion, findings by the referee that when said transfers were made, and when the petition was filed, the unsecured indebtedness of the respondents was about $41,000, and that they had no assets, other than security held by a trust company for less than the amount of its claim, except possibly a claim incapable of realization except at the end of protracted litigation, and found by the referee to have had no fair valuation for the purpose of the issues before him. That there was sufficient evidence to support these findings is not disputed. Taken as they stand, they are capable of being regarded as findings that neither the respondents individually, nor the respondents as a firm, had assets equalling their liabilities, whether firm or individual; and the District Court so regarded them, as appears from its opinion.

The report shows that statements by Ringrose were in evidence, made in connection with the transfers to the respondent creditors. To one of them, who was urging payment of an overdue bill of $3,400, he said, after giving a check on account, that "that was all the firm could then pay"; that "the firm could not then pay him all they owed him"; that the bank had already called "the firm's loans,"

amounting to about $45,000; and that "the firm was not in shape to pay it." At a later interview he told the same creditor "he could not pay" the balance; that "they" had no wool; and, being asked whether "they" had any receivables, he gave an order on another firm for a balance due the respondents. The next day, he gave the same creditor checks from two other customers, apparently making up the amount due, stating that "he was in a hole; that the other creditors might object to giving him the receivables and might holler about it; and he said do it, and he would take his chances." The referee found that at the time other creditors were pressing "the respondents."

To another of said creditors, who was urging payment of an overdue account of more than $16,000, Ringrose stated that "he could not make payment"; that "the bank had called the loans and—he could not pay it"; that "he had not any money"; that "they had" wool, and it was free and clear. To this creditor he then gave orders for about $12,000 worth of warehoused wool, further stating that the trust company had "called his loan," and (after showing the wool) that this was all, and the rest of the wool was pledged; that "he had no accounts receivable"; that the bank was holding "any cash the firm had" on account of having called "his" loan. The referee found that at this time "the firm" had no other unpledged wool and no receivables.

No statements by Draper appear in the evidence reported, nor, as has been said, anything expressly and distinctly relating to his financial condition independently of the firm. But in the absence of any evidence to the contrary, and especially as against this creditor, who had raised no distinct issue as to the separate assets or liabilities of either partner, we do not consider ourselves bound to hold the referee's conclusion unwarranted by any evidence before him. The inference might properly have been drawn, from the undisputed facts and Ringrose's statements, that neither partner was solvent to the extent necessary for the purpose of changing the financial condition of the firm, otherwise such as described by Ringrose in the above statements, to a condition of solvency. It is not contended that Ringrose's intention to prefer the creditors to whom he transferred all the firm's receivables and unpledged wool did not sufficiently appear from his statements made to them at the time. The alleged bankrupts have not appealed themselves from the adjudication, and have not been made parties to this appeal. The present appellant fails to satisfy us that the District Court erred in confirming the report and ordering adjudication.

The decree of the District Court is affirmed, and the appellees recover their costs of appeal.